`IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DERRICK BURNSIDE, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 25-CV-2161 |
| | : | |
| WELL-PATH, LLP, *et al.*, | : | |
| Defendants. | : | |

**MEMORANDUM**

MCHUGH, J.                                                                              MAY 13, 2026

*Pro se* Plaintiff Derrick Burnside brings this civil action pursuant to 42 U.S.C. § 1983,

naming as Defendants Dr. Anthony Letizio and Britney Huner.[1]  Currently before the Court are

the Defendants' Motion to Dismiss Burnside's Complaint.  For the following reasons, the Court

will grant the Motions to Dismiss and provide Burnside with leave to file an amended complaint.

**I.      FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY**[2]

Mr. Burnside is incarcerated at SCI Phoenix.  (Compl. at 3.)  On May 22, 2022, he was

taken outside the prison to Einstein Medical Center for an MRI on his lower back.  (*Id.* at 4.)  He

alleges that on June 25, 2022, he wrote to Defendant Letizio, the Medical Director for Wellpath,

the medical services contractor at SCI Phoenix, stating that he had received his MRI results the

---

[1]  The Court previously dismissed Burnside's claims against other Defendants named in the Complaint.  (ECF No. 10.)  The Clerk of Court will be directed to amend the caption of the case to reflect the proper spelling of the remaining Defendants' names.

[2]  The facts set forth in this Memorandum are taken from Burnside's Complaint (ECF No. 2).  The Court adopts the pagination assigned to the Complaint by the CM/ECF docketing system.  Grammar, spelling, and punctuation errors are cleaned up where necessary.  Additionally, the Court includes facts reflected in publicly available state court records, of which this Court may take judicial notice.  *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

previous day, that they reflected "a heavily damage[d] . . . L-2, L-3, L-4, and L-5 and extensive nerve damage and more than likely [he] will need to have surgery and need to see a Neurologist." (*Id.*)  He also told Letizio about his various symptoms and asked to be sent for surgery.  (*Id.*)  On two dates in September 2022, he submitted grievances asserting that he should be referred to medical providers outside the prison.  (*Id.* at 4-5.)  On October 31, 2022, he "received a receipt" that noted his MRI results had been "signed off by Dr. Letizio" on June 22, and that a "neurosurgery consult has been approved and authorized, but currently reflecting as overdue . . . without effective pain management." (*Id.* at 5.)  It appears that he was taken again to Einstein Medical Center on November 17, 2022, and then told by the SCI Phoenix facility manager on December 6, 2022, that he was "scheduled for pain management in the near future." (*Id.*)

On January 17, 2023, Mr. Burnside was taken to Einstein again and received an "epidural shot on his (lower lumbar) L-4 and S-1." (*Id.*)  He asserts that the doctor who administered the epidural "wanted to see [Burnside again] in 4 to 6 weeks to see if the procedure worked and to see if [his back] hadn't gotten any worse." (*Id.*)  On January 31, 2023, Burnside "submitted a request slip to the medical department at SCI Phoenix stating that the epidural . . . didn't work and that [he] was still in pain and that it made his back worse," and describing his ongoing symptoms.  (*Id.*)  On March 21, 2023, he submitted a sick call slip asserting that he had fallen out of bed after his "left leg gave out," injuring his leg and shoulder.  (*Id.*)  He was seen by Nurse Frusco, who told him that "more than likely the fall stems from his lower back being injured," and ordered an x-ray.  (*Id.* at 5-6.)  He alleges that "after the assessment was done," he asked again to be sent "for a checkup that was supposed to be scheduled 4 to 6 weeks" after his epidural, but "Frusco told [him] that there [was] nothing scheduled." (*Id.* at 6.)  He asserts that

2

he filed two more grievances on March 24 and 30, but was told again that nothing was scheduled.  (*Id.*)  After those grievances were denied, he filed appeals on April 23 and May 3, asserting that the "medication for his shoulder and . . . x-ray on his shoulder" after the fall on March 21 were not sufficient and asserting again that he should be sent for the follow-up appointment after his epidural.  (*Id.* at 6-7.)

On June 14, 2023, he submitted a request to Defendant Huner, asking why he had not been taken to Einstein for the follow-up appointment after his epidural.  (*Id.* at 7.)  Huner responded that "per the site medical director . . . [Burnside] can follow up in [the] medical [department at SCI Phoenix], since [there is] a full medical team on site, follow-up off-site is not always required."  (*Id.*)  Burnside states that he spoke to Deputy Hensley on June 17, 2023, about his post-epidural follow-up, and that, although Hensley told him that "he will be seen," the "SCI Phoenix medical staff has still disregarded [his] follow up."  (*Id.*)  Burnside alleges that "[i]n Oct[ober] 2024 during a sick call examination he was told by defendant Letizio, and the SCI [Phoenix medical department that] all treatment and care was useless based upon the length of attempts to resolve the spinal condition," and that "MRIs continue to reveal [his] L-1 to [his] L-4 disc[s] have worsen[ed] with no further care/treatment scheduled."  (*Id.* at 2.)

Burnside states that at the time of the events in the Complaint, Letizio was the Medical Director for Wellpath at SCI Phoenix and was "responsible for providing healthcare and treatment to inmates."  (*Id.* at 3.)  He asserts that Defendant Huner is the Chief Health Care Administrator at SCI Phoenix, and "has the authority to approve the provisions of treatment to inmates."  (*Id.*)  Burnside alleges that Letizio "ignored the recommendation" that he be sent back to Einstein Medical four to six weeks after his epidural.  (*Id.* at 14.)  He asserts that Letizio knew of his injury "and still didn't send [him] out to [see] a specialist [and] . . . didn't do any physical

3

exam when [he] request[ed] it." (*Id.*)  Burnside alleges that Huner also "disregarded the orders"

that he be sent back to Einstein after his epidural.  (*Id.* at 15.)  He asserts that both Defendants'

acts "caused [him] to suffer more pain" and affected his recovery.  (*Id.* at 14-15.)  He also alleges

that Wellpath's policies and customs concerning referral to outside medical providers caused his

injuries.  (*Id.* at 16-17.)  He seeks damages.  (*Id.* at 40.)

Mr. Burnside's Complaint includes twenty pages of allegations against "all defendants,"

most of which appear unrelated to his own claims.  (*See generally id.* at 19-39.)  Burnside also

attached Exhibits to his Complaint, including an order from the Montgomery County Court of

Common Pleas in a case that appears to have been brought there against the same Defendants

concerning the same events.  (*See id.* at 66 (reproducing order from *Burnside v. Huren*, No.

2024-14024 (C.P. Montgomery)).)  Many pages of Burnside's Complaint bear a mark indicating

that they were "Docketed at Montgomery County Prothonotary" on July 1, 2024.  (*See id.* at 3-7,

14-17.)  Mr. Burnside also includes numerous grievances dated between February and March

2025, appearing to assert that, at a visit to the medical department on February 3, 2025, Burnside

was told by Letizio that he would not be referred out for surgery because Burnside had filed a

lawsuit.  (*Id.* at 57-64.)  However, neither the Montgomery County lawsuit nor any events of

2025 described in the grievances are mentioned in the body of Burnside's Complaint.

After Burnside prepaid his filing fee in full, the Court entered an order dismissing his

claims against the SCI Phoenix Medical Department, explaining that it was not a separate entity

amenable to suit, and his claims against Wellpath,[3] and directed service of the Complaint on

---

[3]  The Court explained that Wellpath had been discharged from liability for any claims for damages arising prior to November 11, 2024, and that Burnside's claims were dismissed without prejudice to his pursuing any remedies in the bankruptcy court, bearing in mind that he sought only money damages and not prospective injunctive relief.  (*See* ECF No. 10 at 1 n.1 (citing *In Re Wellpath Holdings, Inc.*, No. 24-90533 (Bankr. S.D. Tx.)).)  It appears that Burnside filed a

Defendants Letizio and Huner. (*See* ECF No. 10.) Letizio has filed a Motion to Dismiss and Memorandum of Law in Support. (ECF Nos. 28, 29.) Huner has filed a Motion to Dismiss or in the Alternative for Summary Judgment. (ECF No. 30.) Burnside responded to the Defendants' Motions and included further Exhibits. (ECF No. 32.)

Mr. Burnside also filed a "Supplement to Existing Claims," which asserts facts that post-date the events of the Complaint. (*See* ECF No. 33.) Specifically, Burnside asserts that he had another MRI at SCI Phoenix on October 17, 2025, which revealed a tumor on his "spinal disc," and he alleges that "The Defendant had this information since [April 10, 2025,] as a result of [his] multiple MRIs, as detection was plain and apparent." (*Id.* at 1.) He asserts that the Defendants "fail[ed] to notify [him] timely about his true medical condition," and "denied [him] prompt and adequate medical treatment for financial reasons[;] they refused to pay for the treatment." (*Id.*)

## II. STANDARD OF REVIEW

"A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted). In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

document in the bankruptcy court seeking clarification as to the stay of claims during the pendency of the Chapter 11 proceedings. *See In re Wellpath*, No. 24-90566, at Dkt. No. 922. When he subsequently filed a Motion to Proceed against Wellpath on the basis that the stay had been lifted upon discharge, the Court denied his Motion, explaining that his claims against Wellpath had been dismissed, not stayed. (*See* ECF No. 31 at 1 n.1.)

misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555.)  "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted).  In resolving a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

To determine whether a complaint filed by a *pro* se litigant states a claim, a court must accept the facts alleged as true, draw all reasonable inferences in favor of the plaintiff, and "ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024); *see also Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (noting that *pro se* filings are construed liberally).

The Court must also review the pleadings and dismiss the matter if it determines that the action fails to set forth a proper basis for this Court's subject matter jurisdiction.  Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Group Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*").  A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction.  *See*

*Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006)).

## III.    DISCUSSION

### A.    Constitutional Claims

Burnside asserts claims against Defendants Letizio and Huner for violations of his constitutional rights.  The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct." (quoting *Iqbal*, 556 U.S. at 677)); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).  "Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive."  *Chavarriaga v. N.J. Dept. of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1194 (3d Cir. 1995); *Rode*, 845 F.2d at 1201 n.6).

Where there are multiple events and defendants at issue, alleging personal involvement often cannot be accomplished by repeatedly and collectively referring to the "Defendants" as a group without clarifying the specific basis for each Defendant's liability.  *See Lawal v.*

7

*McDonald*, 546 F. App' x 107, 113 (3d Cir. 2014) (agreeing with the district court that the repeated and collective use of the word "Defendants" "fail[ed] to name which specific Defendant engaged in the specific conduct alleged'"). Much of Mr. Burnside's pleading refers collectively to "all defendants." (*See* Compl. at 12, 18-32.) The Court has considered only the well-pleaded, specific factual allegations against the named Defendants.

To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.[4] *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "A serious medical need is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a layperson would easily recognize the necessity for a doctor's attention." *Thomas v. City of Harrisburg*, 88 F.4th 275, 281 (3d Cir. 2023) (cleaned up). "A serious medical need exists where 'failure to treat can be expected to lead to substantial and unnecessary suffering.'" *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Colburn v. Upper Darby Township*, 946 F.2d 1017, 1023 (3d Cir. 1991)).

---

[4] Although Burnside also refers to the Fourteenth Amendment and asserts that the Defendants' acts denied him due process, (*see* Compl. at 1, 18), as a convicted and sentenced state prisoner, his claims regarding his medical treatment arise under the Eighth Amendment because the Fourteenth Amendment is only implicated in deliberate indifference claims brought by pretrial detainees, *see Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). As the Defendants correctly note, Burnside merely makes conclusory allegations of due process violations and includes no facts in his Complaint to support any claim under the Fourteenth Amendment, (*see* ECF No. 30 at 19 (arguing that Burnside has not stated a due process claim)), and the Court does not construe the Complaint to raise such a claim.

Deliberate indifference is properly alleged "where (1) prison authorities deny reasonable requests for medical treatment, (2) knowledge of the need for medical care is accompanied by the intentional refusal to provide it, (3) necessary medical treatment is delayed for non-medical reasons, [or] (4) prison authorities prevent an inmate from receiving recommended treatment for serious medical needs." *Montanez v. Price*, 154 F.4th 127, 141 (3d Cir. 2025) (citation omitted), *petition for cert. filed*, 94 U.S.L.W. 3289 (U.S. Mar. 11, 2026) (No. 25-1073). "[P]rison officials may not 'deny reasonable requests for medical treatment . . . when such denial exposes the inmate to undue suffering or the threat of tangible residual injury.'" *Durham v. Kelley*, 82 F.4th 217, 230 (3d Cir. 2023) (quoting *Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017)); *see also Montanez*, 154 F.4th at 141 ("[The deliberate indifference] standard can also be met by a defendant abandoning a prisoner in a condition that unreasonably exposes him to the threat of tangible residual injury." (internal quotation marks and citation omitted)).

"Not every complaint of inadequate prison medical care rises to the level of deliberate indifference." *Anderson v. Price*, No. 22-3058, 2023 WL 5814664, at *2 (3d Cir. Sept. 8, 2023) (*per curiam*). "Where a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners." *Palakovic*, 854 F.3d at 227 (citing *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993)). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.* at 228 (cleaned up). "Nonetheless, there are circumstances in which some care is provided yet it is insufficient to satisfy constitutional requirements. For instance, prison officials may not, with deliberate indifference to the serious medical needs of the inmate, opt for 'an easier and less

9

efficacious treatment' of the inmate's condition." *Id.* (quoting *West v. Keve*, 571 F.2d 158, 162 (3d Cir. 1978)).  Deliberate indifference includes "situations where 'necessary medical treatment is delayed for non-medical reasons.'" *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)).  It "is also evident where prison officials erect arbitrary and burdensome procedures that result in interminable delays and outright denials of medical care to suffering inmates," or "when prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment." *Monmouth Cnty.*, 834 F.2d at 346-47 (cleaned up).

### 1.    Claims Against Defendant Letizio

Burnside's factual allegations against Defendant Letizio are that: he wrote to Letizio in June 2022 after his initial MRI to detail his symptoms and request that he be seen by a surgeon or neurologist outside the prison; Letizio "signed off" on his MRI results; and that "he was told by Letizio and the SCI [Phoenix medical department that] all treatment and care was useless" in October 2024.  (Compl. at 2, 4-5.)  Burnside asserts that, as the "on-site Medical Director for Wellpath" at SCI Phoenix, Letizio "is responsible for providing healthcare and treatment to inmates."[5]  (*Id.* at 14.)  He alleges that Letizio "ignored the recommendation" that he be sent for

---

[5]  Burnside states that he is suing Letizio in his individual and official capacities.  His "official capacity" claims against Letizio are not cognizable because Wellpath is a private entity.  *See Kreis v. Northampton Cnty. Prison*, No. 21-2360, 2022 WL 4236692, at *8 (E.D. Pa. Sept. 14, 2022) (stating that official capacity claims are "inapplicable to suits against private parties where the entity is also susceptible to suit" (citing *Owens v. Connections Cmty. Support Programs, Inc.,* 840 F. Supp. 2d 791, 796 (D. Del. 2012) ("Generally, a suit against a [ ] public officer in his or her official capacity is used to compel that officer to take some official action [and that] concept . . . is inapplicable to suits against private parties where the entity is also susceptible to suit."))).  Even if official capacity suits against individuals who work for private companies were cognizable, the suit would, in effect, be one against the company for whom that individual works. *See Kentucky v. Graham,* 473 U.S. 159, 105 (1985).  Since Burnside's claims against

a follow-up appointment after his epidural in January 2023, but he does not plead that he spoke to Letizio about that recommendation. (*Id.*) He also alleges that Letizio "didn't do any physical exam when [Burnside] request[ed] it," but does not state when or under what circumstances that refusal occurred. (*Id.*) Defendant Letitzio argues that Burnside's allegations do not rise to the level of deliberate indifference, and amount to nothing more than a disagreement over treatment.[6] (*See* ECF No. 29 at 8-9.)

Mr. Burnside has not stated a claim for relief against Letizio. His allegations seem to focus on Letizio's position as the Medical Director for Wellpath, and much of his allegations regarding his treatment refer to other providers not named as Defendants, such as Nurse Frusco, or Burnside refers generally to "all defendants" or the SCI Phoenix medical department as a whole. Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*). Also, liability under § 1983 cannot be predicated on a *respondeat superior* basis. *Chavarriaga v. N.J. Dep't of Corrs.*, 806 F.3d 210, 227 (3d Cir. 2015); *Robinson v. Delbalso*, No. 22-2378, 2022 WL 17248100, at *2 (3d. Cir. Nov. 28, 2022) (*per curiam*). Consequently, Letizio cannot be liable simply because of his position as Medical Director.

As to Letizio's direct involvement in his claims, he alleges that Letizio "signed off" on his MRI results in June 2022, and then he was not taken for his epidural until January 2023. But

---

Wellpath were previously dismissed as described above, the official capacity claims against Letizio, a Wellpath employee, are dismissed. *Accord Burk v. West*, No. 21-4968, 2021 WL 5758945, at *2 (E.D. Pa. Nov. 24, 2021).

[6] Letizio's Motion to Dismiss includes a page arguing against allegations related to a "skin condition" that required "antibiotics for the infection and acne cream," and mentions having filed a "Notice of Intent to File Non Pros on November 26, 2025." (ECF No. 29 at 14.) These statements are unrelated to this case.

11

he does not plead facts to suggest that Letizio was the cause of that delay.  And, although he makes a conclusory allegation that Letizio "ignored the recommendation" for his follow-up appointment after the epidural, he also pleads facts to suggest that, both before and after his epidural, he was receiving treatment inside the prison.  Burnside also makes a generalized allegation that Letizio and unspecified members of the SCI Phoenix medical department told him that "all treatment and care was useless," in October 2024.  But he goes on to plead that he continued to receive MRIs that "reveal" his condition has "worsen[ed]," and in his supplemental pleading that he was diagnosed by unnamed "Defendants" in October 2025 with a tumor on his spine after another MRI.  The inconsistency between the conclusory statement that he was told treatment and care were "useless," and his receiving continued diagnostic tests renders the Court unable to conclude that the Complaint states a claim to relief against Defendant Letizio.  Accordingly, Letizio's Motion to Dismiss will be granted.[7]  However, Mr. Burnside will be

---

[7]  Letizio also argues that the claims against him should be dismissed because Burnside failed to file a certificate of merit.  (*See* ECF No. 29 at 12-14.)  The Motion is denied in this respect, because in the time since the Motion to Dismiss was filed, the Supreme Court and the United States Court of Appeals for the Third Circuit have determined that the certificate of merit requirement has no applicability in federal court.  *See Berk v. Choy*, 607 U.S. ---, 146 S. Ct. 546, 557 (2026) (holding that state law requiring submission of an affidavit from a medical professional attesting to the suit's merit has no application in federal court); *see also DiFraia v. Ransom*, 171 F.4th 622, 633 (3d Cir. 2026). ("Our precedent applied Pennsylvania's [Certificate of Merit] rule to state-law medical-malpractice claims brought in federal court.  But the Supreme Court just abrogated that precedent, holding that Delaware's analogous requirement did not apply in federal court." (first citing *Liggon-Redding v. Est. of Sugarman*, 659 F.3d 258, 264-65 (3d Cir. 2011); then citing *Berk*, 146 U.S. at 557)).  The Court does not understand Letizio to argue that the dismissal of the claims against him in Burnside's prior action in the Montgomery County Court of Common Pleas by judgment *non pros* for failure to file a certificate of merit carries any prejudicial effect.  *See Burnside v. Huren*, No. 2024-14024 (C.P. Montgomery); *see also Helfrick v. UPMC Shadyside Hosp.*, 65 Pa. D.&C.4th 420, 437 (C.P. Allegheny Oct. 7, 2003), 2003 WL 23580351 (stating, in the context of a prior dismissal for failure to file a certificate of merit in a professional malpractice case, that "[i]t is settled law that where plaintiff has suffered a judgment of non pros, he may later commence a new action between the selfsame parties and alleging the selfsame cause of action so long as the second action is commenced within the applicable statute of limitations . . . [s]ince a non pros is not a judgment on the merits,

given the opportunity to file an amended complaint and include all his factual allegations in one complete document.

### 2.    Claims Against Defendant Huner

Defendant Huner first argues that all official capacity claims against her should be dismissed.  (*See* ECF No. 30 at 7-9.)  The Court agrees.  "Official capacity claims are indistinguishable from claims against the governmental entity that employs" the defendant, here the Pennsylvania Department of Corrections ("DOC").  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n.55 (1978)).  Because the DOC is an agency of the Commonwealth of Pennsylvania, it is not a "person" subject to liability under § 1983 and is, in any event, entitled to Eleventh Amendment immunity from suit in federal court.  *See Lavia v. Pa. Dep' t of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (explaining that, "[b]ecause the Commonwealth of Pennsylvania' s Department of Corrections is a part of the executive department of the Commonwealth, it shares in the Commonwealth's Eleventh Amendment immunity" and is also not considered a person for purposes of § 1983).  Thus, official capacity claims against Huner are really claims against the Commonwealth, which is shielded from § 1983 suits by Eleventh Amendment immunity.  *See Downey v. Pa. Dep' t of Corr.*, 968 F.3d 299, 309-10 (3d Cir. 2020) ("Eleventh Amendment immunity bars actions for retroactive relief against state officers acting

---

it cannot have res judicata effect" (quoting *Hatchigian v. Koch*, 553 A.2d 1018, 1020 (Pa. Super. Ct. 1989))); *cf. Kuhnle v. Prudential Sec., Inc.*, 439 F.3d 187, 188 (3d Cir. 2006) (explaining the limited circumstances in which a judgment *non pros* may carry prejudicial effect in Pennsylvania) (citing, *inter alia*, *Helfrick*).

in their official capacity.").  Accordingly, Huner's Motion will be granted as to the official capacity claims.  These claims will be dismissed.

As to claims against Defendant Huner in her individual capacity, Burnside's only factual allegations concerning her is that on June 14, 2023, he submitted a request to Huner "asking . . . why [he] was not scheduled to be taken" for the follow-up with the doctor who administered his epidural.  (Compl. at 7.)  Huner responded that "per the site medical director," *i.e.*, Defendant Letizio, Burnside "can follow up in medical[;] since [SCI Phoenix has] a full medical team on site, follow-up off-site is not always required."  (*Id.*; *see also* ECF No. 32 at 11 (reproducing Burnside's request to Huner, with response).)  Burnside asserts that Huner was thus deliberately indifferent to his medical needs because she deferred to the judgment of the Wellpath employees who were treating him at SCI Phoenix, rather than following the recommendation of the outside provider.  (*See* Compl. at 13, 15.)  Defendant Huner argues that Burnside has not pleaded sufficient facts to demonstrate her personal involvement in his claims, and that, as a non-medical official, she reasonably relied on the advice of medical providers responsible for Burnside's treatment.  (*See* ECF No. 30 at 13-18.)

"If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands."  *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004); *see also Carter v. Smith*, 483 F. App'x 705, 708 (3d Cir. 2012) (*per curiam*) ("Prison officials cannot be held to be deliberately indifferent merely because they did not respond to the medical complaints of a prisoner who was already being treated by the prison medical staff.").  Further, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with . . . deliberate indifference."  *Spruill*, 372 F.3d at 236.

14

Burnside pleads only that he made single request to Huner about a follow-up appointment with an outside specialist, and that she told him that the medical director's opinion was that the facilities at SCI Phoenix were sufficient to treat him.  He does not plead any facts to suggest that Huner knew that he could not be treated at the prison and still refused to refer him to a medical professional who was able to diagnose and treat his problem.

However, it is not clear to the Court that Burnside would be unable plead facts in an amended complaint to support a claim that Huner was deliberately indifferent to his needs by "prevent[ing him] from receiving recommended treatment for serious medical needs or deny[ing] access to [a] physician capable of evaluating the need for such treatment."  *Monmouth Cnty.*, 834 F.2d at 346-47 (citation omitted); *see also Burke v. Regalado*, 935 F.3d 960, 993 (10th Cir. 2019) ("[I]f the [prison] official knows [her] role in a particular medical emergency is solely to serve as a gatekeeper for other medical personnel capable of treating the condition, and if [s]he delays or refuses to fulfill that gatekeeper role due to deliberate indifference, [s]he also may be liable for deliberate indifference." (internal quotation marks, ellipsis, and citation omitted)); *cf. Gordon v. Schilling*, 937 F.3d 348, 358 (4th Cir. 2019) ("Rather than seriously considering Gordon's requests for HCV treatment and endeavoring to discover why he was not receiving it, Schilling—as the Health Services Director—repeatedly passed the buck").  Accordingly, Huner's Motion to Dismiss will be granted, Burnside's claims against Huner in her individual capacity will be dismissed without prejudice, and Burnside will be granted leave to amend these claims to plead more facts as to Huner's involvement.

**B.      Exhaustion of Administrative Remedies**

The Defendants also move to dismiss Burnside's claims based on purported deficiencies in exhausting his administrative remedies.  (*See* ECF No. 29 at 9-11; ECF No. 30 at 10-12.)

15

Burnside did not represent that the grievances he attached as Exhibits to his Complaint constitute the complete grievance record, and he has no burden at the pleading stage to overcome an exhaustion defense. *See Jones v. Bock*, 549 U.S. 199, 216 (2007) (holding that exhaustion is an affirmative defense that the defendant must plead and prove); *Talley v. Clark*, 111 F.4th 255, 264 (3d Cir. 2024) ("The Supreme Court has explained that the ordinary pleading rule—that a plaintiff need not plead the absence of an affirmative defense or otherwise plead around it— applies in the PLRA context."); *Schmidt v. Skolas*, 770 F.3d 241, 248 (3d Cir. 2014) ("[A] complaint need not anticipate or overcome affirmative defenses . . . ."); *Ray v. Kertes*, 285 F.3d 287, 297 (3d Cir. 2002) ("[N]o provision of the PLRA requires pleading exhaustion with particularity."). Moreover, Burnside pleads that he exhausted his remedies, (*see* Compl. at 7), and the documents that Burnside attached to his "Rebuttal" to the Motions to Dismiss support a plausible inference that discovery will reveal more evidence of exhaustion, (*see* ECF No. 32 at 11-13, 25-31). Because the issue of exhaustion is not conclusively resolved on the face of the Complaint, the Court declines to dismiss any claims on that basis. *See Talley*, 111 F.4th at 264 (quoting *Ray*, 285 F.3d at 297).

### C.    Statute of Limitations

The Defendants also argue that Burnside's claims are barred by the statute of limitations. (*See* ECF No. 29 at 12; No. 30 at 9-10.) Claims under § 1983 are subject to a two-year statute of limitations. *See Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (citations omitted). "A complaint is subject to dismissal for failure to state a claim on statute of limitations grounds only when the statute of limitations defense is apparent on the face of the complaint." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017) (citation omitted). "Federal law, not state law, determines when a limitations period begins to run." *Nguyen v. Pennsylvania*, 906 F.3d 271, 273

16

(3d Cir. 2018) (citing *Kach*, 589 F.3d at 634).  A statute of limitations begins to run "from the moment that a claim accrues," which is "when the last act needed to complete the tort occurs." *Id.* (citing *Kach*, 589 F.3d at 634).  However, "state tolling principles [ ] govern § 1983 claims," unless the state tolling principles contradict federal law or policy, in which case, the federal principles will govern.  *Kach*, 589 F.3d at 639 (citations omitted).  In Pennsylvania, "lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations." *Davis v. Wells Fargo*, 824 F.3d 333, 344 n.13 (3d Cir. 2016) (quoting *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983)).  However, the discovery rule may delay the running of the statute of limitations in certain circumstances.  *See Nicolaou v. Martin*, 195 A.3d 880, 892 (Pa. 2018) ("[T]he discovery rule tolls the statute of limitations where the plaintiff is reasonably unaware that he has been injured and that his injury has been caused by another party's conduct." (citing *Fine v. Checcio*, 870 A.2d 850, 858 (Pa. 2005))).  And under the "continuing violations" doctrine, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period." *Montanez v. Sec'y Pa. Dep't of Corrs.*, 773 F.3d 472, 481 (3d Cir. 2014) (quoting *Colwell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001)).  However, "the continuing violation doctrine does not apply when the plaintiff 'is aware of the injury at the time it occurred.'"  *Id.* (quoting *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 417 n.6 (3d Cir. 2003).  Additionally, "a 'continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation.'"  *Id.* (quoting *Weis-Buy Servs., Inc. v. Paglia*, 411 F.3d 415, 423 (3d Cir. 2005)).

Burnside's Complaint may be considered filed, at the earliest, on April 15, 2025, when he signed it.[8] (*See* Compl. at 41.)  The facts related to his medical treatment begin on May 22, 2022, and extend through his epidural on January 17, 2023.  He then claims deliberate indifference based on a failure to send him for a follow-up with the doctor who performed the epidural within four to six weeks, and that he filed grievances and appeals at least as late as April 23, 2023.  (*See id.* at 6.)  Those efforts to exhaust his claims toll the running of the statute of limitations.  *See Pearson v. Sec'y Dep't of Corrs.*, 775 F.3d 598, 603 (3d Cir. 2015) ("[T]he PLRA is a statutory prohibition that tolls Pennsylvania's statute of limitations while a prisoner exhausts administrative remedies.").  He also mentions acts by Defendant Letizio as late as October 2024, and his exhibits and supplemental pleadings suggest later dates.  Although Burnside does not state a claim to relief for the reasons discussed above, it is not clear on the face of the Complaint whether tolling or the continuing violations doctrine have any effect on his claims, and thus the limitations defense is not apparent.  Accordingly, the Motions to Dismiss will be denied in this respect, as well.

### D.    Exhibits and Piecemeal Pleading

As discussed above, Mr. Burnside submitted numerous exhibits with his original Complaint but makes no reference to those exhibits in pleading the facts to support his claims, and he filed a "Supplement" indicating that he was diagnosed with a tumor on his spine after the filing of his Complaint, but that unspecified "Defendants" had knowledge of that condition prior to the filing of the Complaint.  (*See* Compl. at 57-64; ECF No. 33 at 1.)  A plaintiff may not state

---

[8]  A prisoner's complaint is considered filed at the time he hands it over to prison authorities for forwarding it to the Court. *See Houston v. Lack*, 487 U.S. 266, 276 (1988); *Moody v. Conroy*, 680 F. App'x 140, 144 (3d Cir. 2017) (*per curiam*) ("Under the prison mailbox rule, . . . a pleading is deemed filed at the time a prisoner executes it and delivers it to prison authorities for mailing.").

a claim by relying solely on exhibits. *See Est. of Egenious Coles*, 658 F. App'x at 111 ("[W]e cannot fault the District Court for failing to intuit the necessary factual allegations from one of the many exhibits appended to the complaint."); *see also Berkery v. Credit Collection Servs.*, No. 21-3809, 2021 WL 4060454, at *2 (E.D. Pa. Sept. 7, 2021) ("While a court may consider exhibits attached to a complaint, merely attaching exhibits is insufficient to meet the requirement that a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."). The Federal Rules of Civil Procedure do not contemplate piecemeal pleadings or the amalgamation of pleadings, even in the context of a *pro se* litigant. *See Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019) (*per curiam*) (explaining that "liberal construction of a *pro se* amended complaint does not mean accumulating allegations from superseded pleadings"); *Bryant v. Raddad*, No. 21-1116, 2021 WL 2577061, at *2 (E.D. Pa. June 22, 2021) ("Allowing a plaintiff to file partial amendments or fragmented supplements to the operative pleading, 'presents an undue risk of piecemeal litigation that precludes orderly resolution of cognizable claims.'" (quoting *Uribe v. Taylor*, No. 10-2615, 2011 WL 1670233, at *1 (E.D. Cal. May 2, 2011)); *Brooks-Ngwenya v. Bart Peterson's the Mind Tr.*, No. 16-193, 2017 WL 65310, at *1 (N.D. Ind. Jan. 6, 2017) ("Piecemeal pleadings cause confusion and unnecessarily complicate interpretation of a movant's allegations and intent[] . . . .").

Burnside cannot state a claim to relief based solely on exhibits if he does not plead facts related to those exhibits. And he may not engage in piecemeal pleading through his "Supplement" that refers only to "Defendants" collectively without connecting the conduct of any specific individual to his claims. However, as discussed elsewhere in this Memorandum, Burnside's exhibits and supplemental pleading may present support for the plausibility of the

19

timeliness of Burnside's claims and the exhaustion of his administrative remedies, as well as reason to believe that amendment of his Complaint would not be futile.

### E.    State Law Claims

It is not clear whether Mr. Burnside intended to lodge any claims under state law but, to the extent he did, because the Court has dismissed his federal claims, the Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any state law claims.  Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required.  This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)).  An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain.  *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011).  "[T]he domicile of a prisoner before his imprisonment presumptively remains his domicile during his imprisonment."  *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010).  It is the plaintiff's burden to establish diversity of citizenship, *see Gibbs v. Buck*, 307 U.S. 66, 72 (1939); *Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972) (stating that, in diversity cases, the plaintiff must demonstrate complete diversity between the parties and that the amount in controversy requirement has been met); *Jackson v. Rosen*, C.A.

20

No. 20-2842, 2020 WL 3498131, at *8 (E.D. Pa. June 26, 2020).  Burnside and the Defendants are all Pennsylvania citizens, so there is not complete diversity, and the Court lacks jurisdiction over the state law claims.

### F.    Leave to Amend

The United States Court of Appeals for the Third Circuit has held that district courts should dismiss complaints under the PLRA with leave to amend "unless amendment would be inequitable or futile." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002); *see also Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000).  As described above, Burnside has expressed an intent to amend or supplement his pleading, and there is reason to conclude that amendment would not be futile.  Accordingly, Burnside may file an amended complaint as to his claims for deliberate indifference as to Defendants Letizio and Huner in their individual capacities.

Should he choose to amend, Burnside should remember that his claims against Wellpath for money damages that arose prior to November 11, 2024, have been dismissed from this case.[9] For clarity's sake, this means that any amended complaint may assert claims against Wellpath itself as a defendant in his amended complaint only for acts after November 11, 2024, including any claims for forward-looking injunctive relief.

## IV.    CONCLUSION

For the foregoing reasons, the Defendants' Motions to Dismiss will be granted.  The

---

[9] As explained in the Court's prior order and reiterated above, the dismissal of Burnside's claims against Wellpath was without prejudice to his seeking relief for those claims in the United States Bankruptcy Court for the Southern District of Texas.  (*See* ECF No. 10 at 1 n.1.)  Aside from his request noted above concerning the lifting of the bankruptcy stay, it is not clear to the Court whether Burnside has filed a proof of claim or otherwise sought to pursue relief in the bankruptcy court.

dismissals will be without prejudice as to Burnside's Eighth Amendment claims against Defendants Letizio and Huner in their individual capacities and any state law claims, and with prejudice as to any claims against the Defendants in their official capacities.  Mr. Burnside may file an amended complaint.  An appropriate order follows, containing more information about amendment.

**BY THE COURT:**

/s/ Gerald Austin McHugh
**GERALD A. MCHUGH, J.**